**ORIGINAL**

# In the United States Court of Federal Claims

No. 13-435C

(Filed: February 20, 2014)

**FILED**

FEB 20 2014

U.S. COURT OF
FEDERAL CLAIMS

| | |
|---|---|
| **MONTANO ELECTRICAL CONTRACTOR,** ) ) ) **Plaintiff,** ) ) v. ) ) **UNITED STATES,** ) ) **Defendant.** ) ) | Contract dispute; claim by subcontractor; privity; Contract Disputes Act; 41 U.S.C. § 7104; Miller Act; 40 U.S.C. § 3133; Federal Tort Claims Act; 28 U.S.C. § 1346(b); request to transfer |

Jose Montano, doing business as Montano Electrical Contractor, *pro se*, Madison, Alabama.

Michael P. Goodman, Trial Attorney, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Stuart F. Delery, Deputy Assistant Attorney General, Bryant G. Snee, Acting Director, and Brian A. Mizoguchi, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. Of counsel was David C. Brasfield, Jr., Assistant District Counsel, United States Army Corps of Engineers, Mobile District.

## OPINION AND ORDER

LETTOW, Judge.

In this contract dispute, plaintiff Jose Montano, doing business as Montano Electrical Contractor ("Montano Electrical"), seeks payment from the United States ("the government") for money allegedly owed for electrical work he performed as a subcontractor to a government contractor. Pending before the court is the government's motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC") or, alternatively, for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6).[1]

---

[1] Among other things, the government argues that Mr. Montano cannot proceed *pro se*, representing Montano Electrical. *See* Def.'s Mot. To Dismiss ("Def.'s Mot.") at 9, ECF No. 7 (citing RCFC 83.1). The rule states that "[a]n individual who is not an attorney . . . may not represent a corporation, an entity, or any other person in any proceeding before this court." RCFC 83.1. This rule is not, however, implicated in this case because Mr. Montano is representing himself *pro se* doing business as Montano Electrical Contractor, *see* Compl. Civil

## BACKGROUND[2]

On April 30, 1999, the United States Army Corps of Engineers ("the Corps"), Mobile District, awarded American Renovation and Construction ("ARC") a contract for the design and construction of family housing at Redstone Arsenal in Huntsville, Alabama. *See* Def.'s Mot. at 3. Following the award, ARC entered into a subcontract with Mr. Montano to complete electrical work on the project. *Id.* In January 2002, ARC defaulted on its contract with the government, and its surety, St. Paul Mercury Insurance Company ("St. Paul"), took over and completed the contract using Soltek Pacific ("Soltek") as the completion contractor. *See* Compl. Ex. 3, ¶ 4 (*A. Montano Electrical Contractor*, ASBCA No. 56951, 10-2 BCA ¶ 34587, 2010 WL 4418630 (Oct. 27, 2010) ("ASBCA Op.")).[3] Mr. Montano and St. Paul executed two agreements, assigning Mr. Montano's electrical subcontract to Soltek and releasing St. Paul from any claims Mr. Montano had against it. Compl. at 7. The complaint alleges that Mr. Montano signed the agreements under economic compulsion. *Id.* During the construction process, the original subcontract had been subject to a number of change orders. Compl. at 8-9. The complaint alleges that although Mr. Montano completed the electrical work for ARC, and later Soltek, as required, he was not fully compensated for a number of the change orders. Compl. at 9-10.

On April 14, 2003, St. Paul filed a claim with the government for an equitable adjustment attributable to the additional work and time needed to complete the Redstone Arsenal family-housing project. Compl. Ex. 29, at 2. On September 11, 2003, St. Paul submitted an amendment to its claim, indicating under the heading "Additional Subcontractor Costs" that it was negotiating a settlement with Mr. Montano. *Id.* at 7. On December 23, 2003, Mr. Montano sent a claim to St. Paul seeking additional payments of $520,303.43 under the subcontract, Compl. at 4, also providing a copy of the claim to Gene Curtis, the Corps' contracting officer, *see* Def.'s Mot. at 4.[4] The complaint alleges that Mr. Montano made telephone calls to Mr. Curtis during

---

Cover Sheet, ECF No. 1-1, which he is permitted to do, *see Nova Express v. United States*, 80 Fed. Cl. 236, 237-39 & n.1 (2008). As *Nova Express* indicates, in most states, "sole proprietorships are viewed as having no independent legal identity." 80 Fed. Cl. at 238 (construing state law in applying RCFC 17(b)).

    Mr. Montano has declared bankruptcy, Compl. Ex. 41, at 2, and asserts that his bankruptcy is attributable to the absence of payment under the pertinent subcontract, *see* Pl.'s Resp. to Def.'s Mot. to Dismiss ("Pl.'s Resp.") at 7.

[2]The recitation of background information does not constitute findings of fact by the court and is given solely to provide a context for deciding the current motions. Unless otherwise noted, however, the circumstances appear to be undisputed.

[3]Mr. Montano attached a number of exhibits to his complaint, citations to which refer to the designation of exhibit numbers provided in the electronic case filing system.

[4]St. Paul responded to Mr. Montano on January 27, 2004, stating that it had evaluated his claim and determined that the majority of the amounts due under the subcontract had already been paid, leaving $1,112.84 still to be paid. Compl. Ex. 18, at 1 (Letter from David Johnson to

2

this time, seeking assistance regarding his claim against St. Paul. Compl. at 5. According to the complaint, during these conversations, Mr. Curtis stated that he could not help or provide advice because Mr. Montano was a subcontractor. *Id.* On April 30, 2004, however, Mr. Curtis wrote to Mr. Montano to remind him of his possible remedies against St. Paul under the Miller Act, 40 U.S.C. § 3133, and to inform him that Mr. Curtis had no authority to help him recover from St. Paul. Compl. Ex. 31 (Letter from Curtis to Montano (Apr. 30, 2004)). In this letter, Mr. Curtis mentioned that St. Paul had filed a claim with the government on the prime contract. *Id.* Over the next months, Mr. Montano and the Corps met twice to discuss the disputes between Mr. Montano and St. Paul. *See* Compl. Ex. 32, at 1 (Letter from Curtis to Montano (Sept. 8, 2004)). Among other things, Mr. Montano claimed that St. Paul was violating the Federal Acquisition Regulations ("FAR"), but Mr. Curtis informed him that the government had found no FAR violations by St. Paul and reiterated to Mr. Montano that the Miller Act was the appropriate remedy for nonpayment by the prime contractor. *Id.* Mr. Curtis also reminded Mr. Montano that the dispute did not involve the United States as a party and concluded that he found "no basis to pursue this [matter] further." *Id.*

On November 24, 2004, Mr. Montano submitted a Freedom of Information Act ("FOIA") request for documentation concerning the inspection and acceptance reports for the family-housing project at Redstone Arsenal, the takeover agreement between ARC and St. Paul, and St. Paul's claim against the government regarding the Redstone Arsenal contract. Compl. Ex. 37, at 2 (Letter from Joseph Gonzales to Montano (Feb. 15, 2005)). The government denied this request because the relevant documents contained confidential business data. *Id.* Mr. Montano filed an appeal of the denial. *See* Compl. Ex. 29, at 9 (Letter from Donna Black to Montano (Nov. 17, 2006)) (responding to the appeal). The Corps' counsel advised that the appeal was under consideration at the Corps's headquarters, and that St. Paul's claim against the government "included costs for settlement with A. Montano Electrical in the amount of $156,200.00." *Id.* Mr. Montano sought additional information regarding this settlement from the government, and on March 14, 2007, he received a letter, through counsel, from the Corps stating that a tentative settlement had been reached between St. Paul and the government but that "details [were] still being worked out." *See* Compl. Ex. 30, at 2 (Letter from David Brasfield, Jr. to Robert Presto (Mar. 14, 2007)). The Corps indicated that by June 30, 2007, it hoped to have the necessary funds available to implement the settlement. *Id.* On June 15, 2007, Mr. Montano's counsel then contacted St. Paul in an attempt to secure a portion of the funds for Mr. Montano. *Id.* at 3 (Letter from Presto to Montano (June 15, 2007)). Mr. Montano contends that he did not receive any portion of the settlement funds from St. Paul. Pl.'s Resp. at 19. Subsequently, the Corps informed Mr. Montano that the government had paid St. Paul the amount due under the settlement in June 2007 and considered the claim closed. *See* Compl. Ex. 28 (Letter from Black to Montano (Mar. 20, 2009)).

On September 13, 2009, Mr. Montano filed a request with the Armed Services Board of Contract Appeals ("ASBCA") for "help" on his case. ASBCA Op. at 4. The ASBCA treated the request as an appeal under the Contracts Dispute Act ("CDA"), 41 U.S.C. §§ 7104(a), 7105(e)(1)(A). Ultimately, the ASBCA determined that it lacked jurisdiction over the appeal

---

Mike Bernstein (Jan. 27, 2004)). The complaint admits that Mr. Montano received some "progress payments" but avers that a number of them were late. Compl. at 9-10.

because Mr. Montano was not a contractor as required by the CDA but rather was a subcontractor. ASBCA Op. at 5.

Eventually, on June 28, 2013, Mr. Montano filed suit in this court, seeking monetary relief from the government respecting his subcontract and damages for tortious conduct by the contracting officer. *See* Compl. In lieu of an answer, the government filed a motion to dismiss, arguing that the court lacks subject matter jurisdiction over Mr. Montano's contract claims and that Mr. Montano failed to state a claim upon which relief can be granted regarding his tort claims. Def.'s Mot. at 2-3. That motion has been fully briefed, as has Mr. Montano's request that the court transfer the case if jurisdiction is lacking in this court.

## STANDARDS FOR DECISION

When considering a motion to dismiss for either lack of subject matter jurisdiction or alternatively for failure to state a claim, the plaintiff bears the burden of establishing sufficient facts to show the court's subject matter jurisdiction over each claim and the plausibility of the claims. *See McAfee, Inc. v. United States*, 111 Fed. Cl. 696, 706 (2013) (citing *McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)); *see also Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007). The court construes all unchallenged factual allegations in the complaint in favor of the pleader, but any disputed jurisdictional facts must be proven by a preponderance of the evidence. *McAfee*, 111 Fed. Cl. at 706; *see also Connelly-Lohr v. United States*, 112 Fed. Cl. 350, 352 (2013) (quoting *Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009)). When considering a motion to dismiss for lack of subject matter jurisdiction, the court "may look beyond the pleadings and 'inquire into jurisdictional facts.'" *Central Freight Lines, Inc. v. United States*, 87 Fed. Cl. 104, 107 (2009) (quoting *Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991)). Mr. Montano's *pro se* pleadings are liberally construed, but this leniency does not relieve Mr. Montano of his burden to show jurisdiction. *See Heger v. United States*, 103 Fed. Cl. 261, 263 (2012) (citations omitted).

## JURISDICTION

The Tucker Act, 28 U.S.C. § 1491(a), grants this court jurisdiction to hear disputes arising under governmental contracts. *Central Freight Lines*, 87 Fed. Cl. at 107.[5] Paragraph

---

[5]In relevant portion, the Tucker Act provides that:

(1) The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. . . .

(2) . . . The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under [S]ection 7104(b)(1) of [T]itle 41, including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting

1491(a)(1) applies generally to express or implied-in-fact contracts with the government, while Paragraph 1491(a)(2) pertains specifically to claims subject to the CDA, 41 U.S.C. § 7104(b)(1). *See Record Steel & Constr. Inc. v. United States*, 62 Fed. Cl. 508, 518 (2004). In this case, the parties' focus is specific to whether Mr. Montano can establish privity of contract as required for claims under the CDA.[6]

## DISCUSSION

### A. Contract Disputes Act

Congress enacted the CDA to provide "a fair, balanced, and comprehensive statutory system of legal and administrative remedies in resolving government contract claims." *Winter v. FloorPro, Inc.*, 570 F.3d 1367, 1369 (Fed. Cir. 2009) (citing *Contract Disputes Act of 1978*, S. Rep. No. 95-1118, at 1 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5235, 5235). The statute provides that a contractor can, upon receiving an adverse decision from a contracting officer, either appeal the contracting officer's decision to an agency board of contract appeals or file a claim against the government in this court. 41 U.S.C. § 7104.[7] In either situation, the CDA only applies to "contractors," defined as "a party to a [f]ederal [g]overnment contract other than the [f]ederal [g]overnment." 41 U.S.C. § 7101(7); *see also FloorPro*, 570 F.3d at 1369-70 (citing what is now codified as 41 U.S.C. § 7101(7)) (also citing *Admiralty Constr. Inc. v. Dalton*, 156 F.3d 1217, 1220 (Fed. Cir. 1998) ("[T]he Act emphasizes that only a 'contractor' may appeal the decision of a contracting officer.")). The courts repeatedly have held that, as a general matter, subcontractors lack privity of contract with the federal government and thus cannot bring a claim

---

officer has been issued under section 6 of [the CDA, now codified as 41 U.S.C. § 7103].

28 U.S.C. § 1491(a).

[6]Paragraph 1491(a)(1) similarly requires the existence of a contract between Mr. Montano and the government. *See United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1550-51 (Fed. Cir. 1983) ("'[A] [p]laintiff cannot recover under the Tucker Act [if] [t]he petition does not allege any contract, express or implied in fact, by the [g]overnment with the plaintiff'. . . . This concept of privity [of contract] is mirrored in the CDA.") (quoting *Merritt v. United States*, 267 U.S. 338, 340-41 (1925)). Therefore, the court's analysis regarding jurisdiction over Mr. Montano's claim under the CDA, *i.e.*, if there is privity of contract between Mr. Montano and the government, is also applicable to jurisdiction under Paragraph 1491(a)(1) of the Tucker Act.

[7]Generally a contractor's choice of forum to challenge a contracting officer's final decision is binding. *See Bonneville Assocs. v. United States*, 43 F.3d 649, 653 (Fed. Cir. 1994) (citing *National Neighbors, Inc. v. United States*, 839 F.2d 1539, 1542 (Fed. Cir. 1988)). This election doctrine does not apply when the forum originally selected lacked subject matter jurisdiction over the appeal. *Id.* Consequently, because the ASBCA determined that it lacked subject matter jurisdiction over Mr. Montano's appeal before the ASBCA, *see* ASBCA Op. at 5, he may still bring a claim in this court.

5

under the CDA. *See e.g., E.R. Mitchell Constr. Co. v. Danzig*, 175 F.3d 1369, 1370 (Fed. Cir. 1999) (citing *Erickson Air Crane Co. of Wash v. United States*, 731 F.2d 810, 813 (Fed. Cir. 1984)); *Johnson Controls*, 713 F.2d at 1550 (citing *Merritt*, 267 U.S. at 340-41).

In accord with these precedents, the government argues that as a subcontractor, Mr. Montano cannot bring a claim under the CDA because he lacks privity of contract with the government. Def.'s Mot. at 7. Mr. Montano accepts that he "was not in privity with the United States." Pl.'s Resp. at 13. He nonetheless argues that he should be permitted to proceed despite the lack of privity. First, Mr. Montano contends that the contracting officer failed to adequately inform him about, and preserve his rights under, the Miller Act, 40 U.S.C. § 3133, and that the contracting officer should have withheld funds from St. Paul pursuant to 48 C.F.R. ("FAR") § 52-222.7, but failed to do so. Compl. at 2. Mr. Montano fails to explain how either of these alleged shortcomings should bear on the court's ability to exercise jurisdiction over his CDA claim. These arguments more logically relate to Mr. Montano's tort claims.

Second, Mr. Montano argues that St. Paul's settlement with the government encompassed a pass-through claim made on his behalf, entitling him to a portion of the proceeds of the settlement. Pl.'s Resp. at 6-7. Even absent privity of contract, a subcontractor's claims may be brought against the government if the prime contractor brings the suit on behalf of the subcontractor – as a pass-through or sponsored claim. *See E.R. Mitchell*, 175 F.3d at 1373-74; *see also Harper/Neilson-Dillingham, Builders, Inc. v. United States*, 81 Fed. Cl. 667, 675 (2008); *ACE Constructors, Inc. v. United States*, 70 Fed Cl. 253, 289 (2006), *aff'd*, 499 F.3d 1357 (Fed. Cir. 2007). "[A] suit of this nature may be maintained only when the prime contractor has reimbursed its subcontractor for the latter's damages or remains liable for such reimbursement in the future." *George Hyman Constr. Co. v. United States*, 30 Fed. Cl. 170, 174 (1993) (quoting *J.L. Simmons Co. v. United States*, 304 F.2d 886, 888-89 (Ct. Cl. 1962)). Although Mr. Montano sought information regarding the settlement, neither St. Paul nor the government has provided him with any details about the nature of, or amounts paid under, the settlement. Compl. at 38 & Ex. 29, at 9. In all events, the claim Mr. Montano has brought in this court is not a pass-through claim over which the court may exercise jurisdiction. St. Paul is not a plaintiff in this action and has maintained that it is not liable to Mr. Montano for the damages he seeks. Both of these predicates are required for a proper pass-through claim. Furthermore, because the settlement resolved all of St. Paul's claims against the government, St. Paul could not have sponsored Mr. Montano's claim against the government under the terms of the settlement agreement. *See* Compl. Ex. 28. The court concludes that it lacks subject matter jurisdiction over any claims arising under the CDA. Mr. Montano's remedy was to file a Miller Act suit in the proper United States district court against St. Paul.[8]

---

[8]In pertinent part, the Miller Act, 40 U.S.C. § 3133(b), provides a subcontractor with the right to bring a civil suit against the prime contractor in the appropriate district court for unpaid labor or materials. 40 U.S.C. § 3133(b)(1), (3). A specific statute of limitations requires such a suit to be brought within one year after the last of the labor was performed or material was supplied. *See* 40 U.S.C. § 3133(b)(4); *United States ex rel. Roach Concrete, Inc. v. Veteran Pacific, JV*, 787 F. Supp. 2d 851, 857 (E.D. Wis. 2011).

B. Federal Tort Claims Act

The Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b)(1), enables federal district courts to hear tort claims against the government.[9] Claims of negligence by a contracting officer fall within this grant of jurisdiction. *See Wickliffe v. United States*, 102 Fed. Cl. 102, 110 (2011) (citing *Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1343 (Fed. Cir. 2008)). Conversely, "[t]he plain language of the Tucker Act excludes from the Court of Federal Claims jurisdiction claims sounding in tort." *Rick's Mushroom Serv.*, 521 F.3d at 1343. Therefore, this court cannot consider such claims.

After conceding that his tort claims do not belong in this court, Mr. Montano asks the court to transfer his tort claims to an appropriate district court. Pl.'s Resp. at 15-16. The pertinent statutory authority for such a transfer is provided in 28 U.S.C. § 1631. Section 1631 allows a court that finds that it lacks jurisdiction over a civil case to transfer the case to a court where the actions could have been brought at the time of filing, if such transfer is in the interest of justice. *See Fisherman's Harvest, Inc. v. PBS & J*, 490 F.3d 1371, 1374 (Fed. Cir. 2007).[10] In determining if transfer is warranted, the court must decide not only that it lacks jurisdiction but that the transferee court would possess jurisdiction over the claim. *Id.* For a district court to exercise jurisdiction over a FTCA claim, an administrative claim must first have been filed in accord with the procedure provided in 28 C.F.R. § 14.2-14.4. *See Kokotis v. United States Postal Service*, 223 F.3d 275, 278-79 (4th Cir. 2000) (internal citations omitted); *Jackson v.*

---

[9]In relevant part, the FTCA provides that

> the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

[10]The statute provides:

> Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631.

7

*United States*, 730 F.2d 808, 809-10 (D.C. Cir. 1984); *Gonzales v. United States Postal Service*, 543 F. Supp. 838, 839 (N.D. Cal. 1982). Failure to file an administrative claim results in dismissal of a claim brought in district court for lack of jurisdiction. *E.g.*, *Gonzales*, 543 F. Supp. at 841. Mr. Montano has not filed an administrative claim as required, and as a result, no district court could exercise jurisdiction over his tort claims. Therefore, the court cannot transfer his claims to an appropriate district court because Mr. Montano could not have brought his FTCA claims in district court at the time he filed in this court. *See Johnson v. United States*, 105 Fed. Cl. 85, 96 (2012) (refusing to transfer a case to district court when no district court could have heard plaintiff's claim at the time of filing).

## CONCLUSION

For the reasons stated, the government's motion to dismiss for lack of subject matter jurisdiction is GRANTED. Mr. Montano's request for transfer under 28 U.S.C. § 1631 is DENIED.

The Clerk shall enter judgment accordingly.

No costs.

It is so **ORDERED**.

Charles F. Lettow
Judge